CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS 2019 MAR -4  PM 4: 19
DALLAS DIVISION

DEPUTY CLERK

UNITED STATES OF AMERICA,

       Plaintiff,

v.

SU Y. AMOS MUN a/k/a AMOS MUN,
MICHA MUN, and ONE WAY
INVESTMENTS, INC. d/b/a HANGIL
HOTEL TOWN,

       Defendants.

**319 - CV 0 5 3 3 - B**

Civil Action No. _____

**FILED UNDER SEAL**

## COMPLAINT

Plaintiff, the United States of America, by its undersigned counsel, alleges as

follows:

Defendants Amos Mun, Micha Mun, and One Way Investments, Inc. own and

operate a Dallas drug haven masquerading as a hotel.  Located less than 1,000 feet from

Herbert Marcus Elementary School, Hangil Hotel Town (Han Gil) is a sanctuary for drug

dealers and users to distribute and use drugs with impunity.  With complete indifference

towards their community and federal law, Defendants have knowingly and intentionally

made available and operated the Han Gil as a place for drug dealers and addicts to sell

and use all manner of controlled substances, including heroin, crack, methamphetamine

and cocaine.  Since June, at least two people have died as a result of the drug trade in the

Han Gil.

Instead of attempting to remove drug dealers and users from the premises, the Defendants endorse and profit from the sale and use of drugs at the Han Gil. Defendants charge drug dealers at least $80 per day, or $560 per week, to use a room at the Han Gil to prepare and sell drugs. Individuals who seek only to use drugs or who have a minimal involvement in the drug trade are charged as little as $200 per week to stay at the Han Gil. As a result of the Defendants' validation of drug trafficking and use in and around the premises, the Han Gil is inundated with violence, illegal firearms and prostitution.

The Defendants have violated 21 U.S.C. § 856(a)(1) and (a)(2) by knowingly and intentionally making the Han Gil available for the use and sale of controlled substances. Pursuant to 21 U.S.C. § 856(d) and 28 C.F.R. § 85.5, Defendants are liable to the United States for a civil penalty in the amount of not more than the greater of $333,328 or two times the gross receipts, either known or estimated, that were derived from each violation that is attributable to each of the Defendants. Additionally, pursuant to § 856(e), the United States requests that the Court enter a preliminary and permanent injunction enjoining the Defendants from operating the Han Gil.

## I.  Jurisdiction and Venue

1.     This action is brought by the United States under 21 U.S.C. § 856, which is part of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-971. This Court has subject matter jurisdiction over the government's claims under 21 U.S.C. §§ 843(f)(2), 856, and 882(a), and 28 U.S.C. §§ 1345 and 1355.

2.     Venue is proper in the Northern District of Texas under 21 U.S.C. § 843(f)(2) and 28 U.S.C. §§ 1391(b) and 1395(a), because Defendants are located,

reside, and do business in this district, and all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## II.    Parties

3.    Plaintiff is the United States of America.

4.    Defendant Su Y. "Amos" Mun is a Texas resident.  At all times relevant to this complaint, Mr. Mun was, and is currently, an owner and operator of Hangil Hotel Town.  *See* Exhibits 1, 3, and 4 attached hereto.  Mr. Mun can be served with process at 11301 Dennis Road, Dallas, Texas 75229 or wherever he may be found.

5.    Defendant Micha Mun is a Texas resident.  At all times relevant to this complaint, Micha Mun was, and is currently, an operator of Hangil Hotel Town.  Ms. Mun has, at the least, a purported community property interest in the property at 11301 Dennis Road, as evidenced by her signature on a contract and transfer of tax lien related to the property.  *See* Exhibit 2 attached hereto.  Ms. Mun can be served with process at 11301 Dennis Road, Dallas, Texas 75229 or wherever she may be found.

6.    Defendant One Way Investments, Inc. d/b/a Hangil Hotel Town is located at 11301 Dennis Road, Dallas, Texas 75229.  One Way Investments can be served with process through its president, sole director, and registered agent, Amos Mun, at 11301 Dennis Road, Dallas, Texas 75229 or wherever he may be found.

## III.    Controlled Substances Act

7.    The Controlled Substances Act, 21 U.S.C. §801-971, established a comprehensive and carefully balanced regulatory scheme to control the distribution, tracking and use of controlled substances.  A "controlled substance" is defined as "a drug

or other substance, or immediate precursor," included in the statutory schedules provided in 21 U.S.C § 812(c). 21 USC § 802(6). The term includes illicit drugs such as heroin, crack, cocaine, and marijuana, as well as certain prescription drugs such as Xanax. The terms "drug" and "controlled substance" are used interchangeably throughout this complaint.

8.      Amongst its numerous provisions, the CSA provides that it is unlawful to manage or control any place, regardless of compensation, for the purpose of unlawfully distributing or using a controlled substance, or to make available for use any place for the purpose of unlawfully distributing or using a controlled substance. Commonly referred to as the federal "crack house" statute, 21 U.S.C. § 856 was passed in response to growing public concern regarding crack cocaine use. The crack house statute was added to the Controlled Substances Act in 1986 to enable criminal prosecution of property owners and operators who intentionally allow their property to be used for the distribution and use of illicit drugs. Congress's intent in enacting the statute was clear: to "[o]utlaw[] operation of houses or buildings, so called 'crack houses,' where 'crack,' cocaine and other drugs are manufactured and used." 132 Cong. Rec. 26,474 (1986 excerpt of Senate Amendment No. 3034 to H.R. 5484 99th Cong. (1986)).

9.      Section 856 was further amended in 2003 to include civil remedies, including provisions through which the United States can seek monetary penalties and declaratory and injunctive relief against violators. With the amendments to § 856, Congress intended to make clear that "[i]llegal drug use in any location [would] not be tolerated, regardless of what cover activity is created to hide the transaction." 108th

Cong., S. 226, 149 Cong. Rec. S1449, S1679 (statement of Sen. Grassley).

10.     Property owners and operators who knowingly allow others to use their property for the purpose of distributing or using drugs are subject to significant criminal and civil penalties, as well as injunctive and declaratory remedies. In the event one is found liable for violating 21 U.S.C. §856(a), the statute provides for civil penalties for each violation of not more than the greater of $333,328, or two times the gross receipts that were derived from each violation, as well as declaratory and injunctive relief. 21 U.S.C. § 856(d)(1); 856(e); 28 C.F.R. § 85.5.

## IV.     The Han Gil

11.     The Han Gil, located at 11301 Dennis Road, Dallas, Texas 75229, is a single-story building of about 45,500 square feet originally built as a nursing facility, but currently operating as a purported hotel. The Han Gil has several guest rooms spread throughout six wings.

12.     The Han Gil is located within 1000 feet of a local elementary school—Herbert Marcus Elementary School—and within approximately 100 yards of a playground where children frequently play.

13.     According to Dallas County Central Appraisal District records, Defendant Amos Mun owns the property located at 11301 Dennis Road, referred to herein as the Han Gil. *See* Exhibit 1 attached hereto. Defendant Micha Mun has, at the least, a purported community property interest in the property at 11301 Dennis Road, as evidenced by her signature on a contract and transfer of tax lien related to the property. *See* Exhibit 2 attached hereto.

14.     According to filings with the Dallas County Clerk's Office, Defendant One Way Investments is the operator of the Han Gil.  *See* Exhibit 3 attached hereto. Defendant Amos Mun is the president and sole director of One Way Investments.  *See* Exhibit 4 attached hereto.

15.     Defendant Amos Mun is the face of the Han Gil.  Mun and his wife, co-defendant Micha Mun, operate, maintain, manage, make available for use, and control the Han Gil.  The Muns live in the Han Gil, using at least one wing as their personal residence.

16.     The Han Gil has surveillance cameras that monitor different hallways and areas in and around the building.  These cameras allow Defendants to monitor and observe what is occurring inside and outside of the Han Gil.  At least one of these cameras monitors the back parking lot, where frequent drug activity is known to occur.

### V.     Drug distribution and drug use are rampant at the Han Gil.

17.     The Han Gil is well-known as a place where drug dealers and users can go to buy, sell, and use drugs, commonly referred to as a "trap."  In fact, a simple Google search reveals multiple customer reviews describing the Han Gil as a "trap" and drug haven.  Examples of these Google reviews are attached hereto as Exhibit 5.

18.     Beginning in at least June 2018 and continuing even today, numerous drug dealers have rented and are renting rooms at the Han Gil from the Defendants.  These drug dealers sold and still sell controlled substances out of rented rooms at the Han Gil every single day.  All manner of illicit drugs, including crack, cocaine, heroin, methamphetamine and marijuana, have been sold out of the Han Gil daily from June

2018 through present.

19.     Defendants rented and still rent rooms in the Han Gil to these drug dealers, despite knowing that these individuals intend to use the rented rooms for the sale and use of controlled substances.

20.     Because there were and are numerous drug dealers selling controlled substances out of Han Gil "guest" rooms, there was and is a constant flurry of activity inside the hotel every day.  This flurry of activity consists of foot traffic in and out of the Han Gil by individuals visiting the hotel for the sole purpose of purchasing and using drugs.

21.     Since June 2018, there have been at least 20 **reported** drug-related incidents at the Han Gil.  Many of the incidents occurred in the hallways of the Han Gil, with police present, giving loud verbal commands to the individuals involved.  Other incidents occur in the parking lot, and at times inside the hallways and rooms of the Han Gil.  Many of these incidents ended in police making arrests.

22.     For several years, Defendants have owned, operated, managed, and lived in the Han Gil.  Defendants know, and have known, about the numerous drug related incidents occurring at the Han Gil.  They were present for several of the drug related incidents and instead of taking any action to stop the drug sales and use in and around the Han Gil, knowingly and intentionally profited from it.

A.     **Since June 2018, at least two people have died from drug activity in the Han Gil and there have been numerous reported drug related incidents.**

23.     Defendants' willingness to rent rooms to known drug dealers and make the Han Gil available for the distribution and use of illegal drugs has created an environment where drug-related reports to and arrests by law enforcement are constant.  This environment has also led to at least two drug-related deaths.

*At least two people have died from drug related activity at the Han Gil since June.*

24.     In June 2018, J.B. was using heroin in the Han Gil and overdosed.  M.B. was with J.B. at the time of his overdose but was unable to call 9-1-1.  M.B. asked someone to call an ambulance, but was told the call was never made because it would draw attention to the Han Gil.  Defendant Micha Mun was present for this discussion.

25.     M.B. took J.B. to the hospital, where J.B. tragically passed away.

26.     When M.B. returned to the Han Gil from the hospital, she spoke with Defendant Amos Mun to determine whether any of the Han Gil's surveillance cameras had recordings showing J.B. being carried out.  Rather than alerting police to the incident, Amos Mun assured M.B. that there were no recordings because he transferred the recordings to a hard-drive and then deleted them.

27.     On December 27, 2018, a female died in a "trap" room within the Han Gil.

28.     A known drug dealer—E.F.—and another individual removed the victim's body from the Han Gil room.  Law enforcement agents recovered the victim's body in a wooded area in January 2019.

*In addition to the tragic loss of two lives, there have been numerous reported drug related incidents and arrests at the Han Gil.*

29.     Since June 2018, criminal conduct on the Han Gil property has been

constant.  While unreported drug activity runs rampant, the documented police reports

paint a clear picture of the constant criminal activity at the Han Gil.  Below is a sampling

of the documented drug activity at the Han Gil.

30.     On August 16, 2018, police officers located a stolen vehicle in the parking

lot of the Han Gil with 0.1 grams of heroin and 0.2 grams of crack cocaine, as well as

crack pipes, needles, and baggies with residue.  To apprehend the individual, who was

loitering near the stolen vehicle (with drugs inside), officers chased him inside the Han

Gil.  The officers yelled at the individual as he ran into Room 376 of the Han Gil.  The

room's occupant made the individual leave the room, at which point he was arrested.

31.     On August 18, 2018, officers were called due to an active shooter on foot

at the Han Gil.  Upon arriving at the Han Gil, officers found a trail of blood leading to

Room 362.  The individual who was believed to be staying in Room 362 was arrested and

found to be in possession of 0.1 grams of methamphetamine.

32.     On August 26, 2018, patrolling police officers noticed an unattended,

running vehicle in the parking lot of the Han Gil.  Officers tried to locate the owner of the

running vehicle but were unable to do so.  They did, however, recover two plastic bags

containing Alprazolam (i.e., Xanax) and "a black sticky substance."

33.     On September 23, 2018, police officers responded to a call at the Han Gil,

and an individual who identified herself as working at the Han Gil stated that she had

seen a male and female "doing heroin and meth" at the hotel the night before.

34.     On October 17, 2018, police officers noticed a car running in the parking lot of the Han Gil.  When the officers approached the vehicle, the individual inside was having difficulty rolling down the window and keeping his head up.  Police therefore requested an ambulance.  The officers found 45 unopened syringes, a glass pipe, a bong, and other drug paraphernalia.

35.     On November 9, 2018, officers noticed a car parked in the back parking lot of the Han Gil.  The individual inside the car tried to flee—first by car and then on foot—but was detained.  Officers recovered 0.4 grams of heroin and nine pills as well as a clear glass tube known for smoking crack cocaine from the individual and his car.

36.     On November 10, 2018, officers patrolling the Han Gil area noticed a vehicle they determined to be stolen in the parking lot.  Upon approaching the vehicle, the officers noticed a woman attempting to inject her left arm with a syringe and ordered her and another individual out of the car.  The individuals exited the car and the officers found 3.2 grams of heroin and 1.1 grams of marijuana, as well as two syringes.

37.     On November 21, 2018, Dallas police officers responded to a call at the Han Gil.  The officers approached a vehicle that appeared to be related to the call, and after the driver almost hit one of the responding officers, the vehicle stopped.  The officers found heroin and Xanax in the car and arrested the individuals.

38.     Also on November 21, 2018, police officers inside the Han Gil found a blue baggie with a white powdery substance and a clear wrapper with a tar-like substance that appeared to be heroin.  These baggies of drugs were located openly in the hallway of the

Han Gil, though the officers could not determine the "owner" of the items.

39.     On December 2, 2018, two officers patrolling the area near the Han Gil noticed suspicious activity in and around a vehicle in the Han Gil parking lot. The officers approached the vehicle and upon conducting a search of the vehicle, found 7.3 grams of heroin, 4 syringes, and a spoon with drug residue.

40.     On December 18, 2018, two individuals were arrested in the parking lot of the Han Gil, one for possessing 0.8 grams of heroin and the other for possessing heroin and marijuana (along with tablets, cell phones, a spoon with drug residue, and a GPS).

41.     On December 21, 2018, police officers responded to a call regarding a disturbance in Han Gil Room 352. The police officers entered the Han Gil, gave loud verbal warnings to an individual attempting to dispose of some item "underneath an assortment of matresses [sic] that were littered inside of the hotel corridor." The individual was eventually detained and gave the officers the item he had hidden—a baggie of 0.2 grams of heroin—that he admitted he purchased from Room 352 at the Han Gil.[1]

42.     On December 31, 2018, officers arrested two individuals in the Han Gil parking lot. The arrested person told the officers that he was at the Han Gil to purchase drugs. The officers discovered numerous syringes, a push rod, a spoon with drug residue, heroin, and crack cocaine.

---

[1] Notably, officers arrested an individual on the way to respond to this call, who admitted to buying heroin from Room 352.

43.     On January 4, 2019, Dallas police officers stopped a car leaving the Han Gil.  The individual inside the car told officers that he had purchased cocaine from two drug dealers in Room 316 of the Han Gil.  The officers arrested the individual, who was in possession of 0.2 grams of cocaine.

44.     On January 14, 2019, police officers entered the Han Gil at 10:30 pm. Upon finding an unidentified male who was not responding to their commands to open doors, the officers found Defendant Amos Mun and alerted him to the issue.  Shortly thereafter, the officers found cocaine on the individual and arrested him in the parking lot of the Han Gil.

45.     On January 30, 2019, police officers made an arrest at the Han Gil of an individual possessing almost one gram of heroin and 1.2 grams of marijuana as well as syringes and other drug paraphernalia.

46.     Paragraphs 29 through 45 above only represent reported incidents of drug related activity at the Han Gil.  Drug sales and usage were and are on-going every day at the Han Gil.

**B.      Defendants Amos Mun and One Way Investments were present on multiple occasions when drugs were detected by authorities inside the Han Gil.**

47.     Defendant Amos Mun, individually and as One Way Investment's president, was present for at least three additional recent significant reported drug incidents, which occurred during code enforcement inspections made by the City of Dallas's City Prosecutor's Office, Code and Fire Inspectors, and Dallas police officers.

*The October 5, 2018 Inspection*

48.     Defendant Amos Mun, individually and as the president and sole director of One Way Investments, was present in the hotel room when drugs and firearms were discovered in the Han Gil on October 5, 2018 during a code enforcement inspection. During the October 5 inspection, a search of a room revealed two digital scales, crack cocaine, heroin, methamphetamine, alprazolam (also known as Xanax), and marijuana. The search also revealed two handguns, an AR-15 pistol, several rounds of live ammunition, and cash.

49.     In total, Dallas police officers recovered 12.9 grams of heroin, 9.9 grams of crack cocaine, 3.7 grams of methamphetamine, 27.5 grams of Alprazolam pills, and 6.5 grams of marijuana.

*The November 2, 2018 Inspection*

50.     Just one month later, Amos Mun was present when drugs and firearms were discovered in the Han Gil on November 2, 2018 during a code enforcement inspection. In fact, Mr. Mun sawed off the door handle of one of the rooms during the inspection.

51.     During the November 2 inspection of Han Gil rooms 350 and 352, a large stash of illegal pills (including ecstasy, opioids, and unknown pills), drug paraphernalia, and firearms were discovered.  Next to the drug and drug items, a black AR-15 rifle, two shotguns, a semi-automatic 9MM pistol, and ammunition were also found.

52.     Rooms 350 and 352 had cameras in the hallway on the floor in plain view so that people inside the rooms could monitor who was approaching the rooms. These

cameras were not part of the camera system Defendants used to monitor the Han Gil, but were a separate system used by the rooms' occupants.

*The January 24, 2019 Inspection*

53.    Mr. Mun was again present when drugs and firearms were discovered inside the Han Gil on January 24, 2019.

54.    During a code enforcement inspection at the Han Gil on January 24, a search of room 333 revealed marijuana, methamphetamines, and GHB.

55.    Inspectors also discovered drug ledgers, digital scales, two crack pipes, additional paraphernalia for drug use and distribution, multiple guns and ammunition, a knife, and a surveillance camera.

**C.    Not only are Defendants aware of the drug trade and use at the Han Gil – they facilitate and profit from it.**

56.    Defendant Amos Mun, individually and as the president of One Way Investments, received cash from known drug dealers or individuals associated with known drug dealers in the Han Gil.

**1.    Amos Mun is repeatedly in rooms where drugs and known drug dealers are present, accepting cash drug proceeds.**

57.    On December 10, 2018, Amos Mun was inside a known trap room at the Han Gil.  Amos Mun waited at a table in the room as individuals around him prepared to use drugs, used drugs, and/or waited to purchase drugs.  Mr. Mun was handed and accepted cash from the individual working the table in the trap room.

58.    On December 27, 2018, Amos Mun was inside a known trap room at the

Han Gil with a known drug dealer—E.F.—as E.F. and M.S. (a known drug associate of

E.F.) counted cash.[2]  Amos Mun sat in the trap room while E.F. and M.S. counted money,

and then gave Amos Mun a large amount of bills, which Amos Mun accepted and

counted.  After accepting and counting the cash, Amos Mun remained in the room for

approximately 15 to 20 additional minutes so that he could look at and examine a bolt-

action rifle that E.F. handed to him.

59.     On December 28, 2018, Amos Mun was inside a known trap room at the

Han Gil.  While Amos Mun was in the room, drugs were packaged and prepared for

distribution.  Mun waited as three individuals in the room—K.R., C.H. and another

individual (all three known drug associates of E.F.)—prepared drugs for distribution

and/or counted cash.  Mun then received and accepted cash from K.R., who was seated at

the drug table.

**2.     Defendants knowingly operated, maintained, controlled, and profited
from the on-going criminal activity at the Han Gil.**

60.     Defendants Amos and Micha Mun check individuals into the Han Gil.

61.     When an individual requests a room at the back of Han Gil (where the large

majority of drug selling and using occurs), Defendant Amos Mun honors the request.

62.     Rather than address the criminal activity inside the Han Gil, the Muns

profit from and help conceal the drug trade.

63.     Defendants charge individuals a drug "tax" to operate their trap rooms in

---

[2] E.F. rented multiple rooms at the Han Gil and ran several trap rooms out of the Han Gil.

the Han Gil.  For drug dealers who rent rooms to sell drugs or conduct other illegal activity, Defendants charge at least $80 per day.  At a minimum, Defendants charge and receive $560 per week for each Han Gil room they rent to individuals who prepare, package, and sell drugs.  Non-drug dealers (normally drug users) or individuals who are less involved in the drug trade are charged as little as $200 per week to stay at the Han Gil.

64.    Defendants collect, or attempt to collect, rent and the drug taxes every day, indifferent to the criminal activity occurring in front of him.  To collect these payments, Amos Mun walks the halls, collecting money from each room.  Mun has walked into rooms where drugs and drug paraphernalia associated with drug use and distribution are in plain sight.

65.    If someone does not pay the $80 drug tax, Mr. Mun normally kicks the person out, locking the room until the person has paid the $80.  The person is then able to return to selling controlled substances out of his or her room and/or retrieve his or her belongings.

66.    In advance of Fire and Code inspections, Amos Mun and/or Micha Mun warned M.B., other drug dealers and others residing at the Han Gil that inspectors from either the City or County of Dallas would be arriving to inspect the Han Gil on a particular date.  The inspection warnings from the Muns were verbal and gave the individuals sufficient notice to remove controlled substances and firearms from sight.

67.    Defendants also leave at least one door at the Han Gil unlocked, normally a back door, to allow individuals free access to the rooms in the Han Gil.

68.   Defendants allowed drug dealers to place webcams in the hallways of the Han Gil, which allowed individuals inside the rooms to see anyone coming down the hallway, including law enforcement.

69.   Defendants allowed known drug dealer, E.F., to install peepholes in the doors of rooms at the Han Gil he rented for the sale of controlled substances.  The other doors at the Han Gil do not have peepholes.

70.   Defendants have seen individuals buying and selling drugs in the rooms of the Han Gil.

71.   Defendants regularly see individuals using drugs inside and around the Han Gil.

**D.    The Han Gil is also home to other criminal activity, further demonstrating the criminal, drug-fueled environment existing there.**

72.   As if the reported drug-related incidents in the last nine months at the Han Gil were not sufficient to demonstrate the criminal environment that exists there, the Han Gil has also been the location of several additional violent crimes and weapons offenses.

73.   On January 28, 2019, police responded to a call that an individual was shot at the Han Gil.  It was later confirmed that the individual was murdered.

74.   More recently, on February 15, 2019, there was another reported shooting in the parking lot of the Han Gil.

75.   In addition to the multiple shootings, it is common practice for individuals to walk the grounds of the Han Gil with assault weapons.

76.   In addition to the trap rooms, there are certain Han Gil rooms that are

designated for working prostitutes, resulting in constant prostitution on the premises.

77.     Defendants were and are aware of the prostitution occurring inside the Han Gil.

78.     In sum, Defendants rent rooms inside the Han Gil to individuals for a daily rate so that those individuals can sell controlled substances out of the Han Gil. Defendants allow the drug dealers to install cameras in hallways and peepholes in the doors so that drug dealers can avoid police presence and detection. Defendants do not stop drug-seeking individuals from entering the Han Gil to purchase and use drugs on the premises, and instead often leave at least one door unlocked for almost constant access. Defendants do not call for help when someone overdoses. Instead, they brazenly maintain the Han Gil as a haven for the drug distributors and drug seekers. Defendants profit from the drug trade and create a lawless and increasingly dangerous criminal environment that provides drug dealers the ideal location for their criminal conduct in the Dallas community.

## VI.     Causes of Action

### Count I
### Knowingly Maintain a Place for the Purpose of
### Distributing or Using Controlled Substances
### 21 U.S.C. §§ 856(a)(1), 856(d)(1)—Civil Penalties

79.     The United States repeats and realleges Paragraphs 1 through 78 as if fully set forth herein.

80.     Defendants knowingly used or maintained the Han Gil for the purpose of distributing and using controlled substances in violation of 21 U.S.C. § 856(a)(1). At

least one purpose of Defendants is to maintain the Han Gil as a premises for the sale and use of controlled substances. *United States v. Roberts*, 913 F.2d 211, 220-21 (5th Cir. 1990); *United States v. Soto-Silva*, 129 F.3d 340, 346 (5th Cir. 1997).

81.    As a result of the foregoing, Defendants are liable to the United States for a civil penalty in the amount of not more than the greater of $333,328 or two times the gross receipts, either known or estimated, that were derived from each violation that is attributable to each of the Defendants, for each violation pursuant to 21 U.S.C. §§ 856(d)(1)(A), (d)(1)(B) and 28 C.F.R. § 85.5.

### Count II
### Managing or Controlling a Place and Knowingly Profiting from and Making it Available for the Use and Distribution of Controlled Substances
### 21 U.S.C. §§ 856(a)(2), 856(d)(1)—Civil Penalties

82.    The United States repeats and realleges Paragraphs 1 through 81 as if fully set forth herein.

83.    Defendants knowingly managed or controlled Han Gil and knowingly and intentionally made it available for the purpose of unlawfully storing, distributing, and using controlled substances in violation of 21 U.S.C. § 856(a)(2).

84.    As a result of the foregoing, Defendants are liable to the United States for a civil penalty in the amount of not more than the greater of $333,328 or two times the gross receipts, either known or estimated, that were derived from each violation that is attributable to each of the Defendants, for each violation pursuant to 21 U.S.C. §§ 856(d)(1)(A), (d)(1)(B) and 28 C.F.R. § 85.5.

**Count III**
**Violation of 21 § 856(a)(1) and (a)(2),**
**21 U.S.C. §§ 856(e) and 843(f)—Injunctive Relief**

85.     The United States repeats and realleges Paragraphs 1 through 84 as if fully set forth herein.

86.     As a result of the violations set forth above in Counts I and II, Defendants are liable for injunctive relief pursuant to 21 U.S.C. §§ 856(e) and 843(f).

87.     Specifically, the United States requests a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting the Muns and their business entity from operating the Han Gil as a motel, hotel or other place of occupancy including: renting, leasing, licensing or otherwise permitting any occupancy of all or any part of the Han Gil premises to anyone other than the Defendants themselves and any immediate family members currently residing on the premises; allowing any business transactions, other than transactions solely related to the building's structural and/or operational integrity, in or on Han Gil premises; scheduling or making reservations for any individuals to stay at the Han Gil; entering into any third party contracts for services in connection with the Han Gil, other than contracts related to the building's structural and/or operational integrity; and terminating any and all Han Gil guests' license to (or claim of right to) occupy all or any portion of the Han Gil's rooms or premises.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that judgment be entered in its favor and against Defendants jointly and severally as follows:

A.     On the First Count, impose a civil penalty on Defendants of not more than

$333,328 for each and every violation of 21 U.S.C. § 856(a)(1) committed by each

Defendant;

      B.     On the Second Count, impose a civil penalty on Defendants of not more

than $333,328 for each and every violation of 21 U.S.C. § 856(a)(2) committed by each

Defendant; and

      C.     On the Third Count, order appropriate injunctive relief pursuant to 21

U.S.C. §§ 856(e) and 843(f); and

      D.     Grant the United States any such further relief as otherwise entitled.

             Respectfully submitted,

             ERIN NEALY COX
             United States Attorney

             J. Scott Hogan
             Assistant United States Attorney
             Texas Bar No. 24032425
             scott.hogan@usdoj.gov
             Lindsey Beran
             Assistant United States Attorney
             Texas Bar No. 24051767
             Braden Civins
             Assistant United States Attorney
             Texas Bar No. 24080836
             1100 Commerce Street, Third Floor
             Dallas, Texas 75242-1699
             Telephone:   214-659-8600
             Facsimile:   214-659-8807
             lindsey.beran@usdoj.gov

             Attorneys for the United States of
             America



Home | Find Property | Contact Us

# Commercial Account #00000609205000000

Location  Owner  Legal Desc  Value  Improvements  Land  Exemptions  Estimated Taxes  Building Footprint  History

## Location (Current 2019)

**Address:** 11301 DENNIS RD
**Market Area:** 0
**Mapsco:** 23-A (DALLAS)

### DCAD Property Map

### View Photo

### 2018 Appraisal Notice

### Electronic Documents (ENS)

### Print Homestead Exemption Form

## Owner (Current 2019)

MUN SU Y AMOS
11301 DENNIS RD
DALLAS, TEXAS 752292305

## Multi-Owner (Current 2019)

| Owner Name | Ownership % |
|---|---|
| MUN SU Y AMOS | 100% |

## Legal Desc (Current 2019)

**1:** BLK 6607
**2:** ACS 2.9521
**3:**
**4:** VOL2003127/12692 DD06262003 CO-DC
**5:** 6607 000 00000 1006607 000
   **Deed Transfer Date:** 12/11/2014

## Value

| 2018 Certified Values | |
|---|---|
| **Improvement:** | $699,940 |
| **Land:** | + $450,060 |
| **Market Value:** | = $1,150,000 |
| **Revaluation Year:** | 2018 |
| **Previous Revaluation Year:** | 2017 |

## Improvements (Current 2019)

| # | Desc: MOTEL | Total Area: 45,467 sqft | Year Built: 1965 |
|---|---|---|---|

| 1 | Construction | Depreciation | Appraisal Method |
|---|---|---|---|
| | **Construction:** C-MASONRY, BLOCK, TILT-WALL | **Physical:** 60% **Functional:** + 0% **External:** + 0% **Total:** = 60% | INCOME |
| | **Foundation (Area):** PIERS (45,467 sqft) | | |
| | **Net Lease Area :** 45,467 sqft | **Quality:** AVERAGE | |
| | **# Stories:** 1 | **Condition:** AVERAGE | |
| | **# Units:** 80 | | |
| | **Basement (Area):** UNASSIGNED | | |
| | **Heat:** CENTRAL HEAT | | |

GOVERNMENT EXHIBIT 1

1/4

**A/C:** WINDOW

### Land (2018 Certified Values)

| # | State Code | Zoning | Frontage (ft) | Depth (ft) | Area | Pricing Method | Unit Price | Market Adjustment | Adjusted Price | Ag Land |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | COMMERCIAL IMPROVEMENTS | INDUSTRIAL/RESEARCH DISTRICT | 0 | 0 | 128,589.0000 SQUARE FEET | STANDARD | $3.50 | 0% | $450,062 | N |

**\* All Exemption information reflects 2018 Certified Values. \***

### Exemptions (2018 Certified Values)
No Exemptions

### Estimated Taxes (2018 Certified Values)

|  | City | School | County and School Equalization | College | Hospital | Special District |
|---|---|---|---|---|---|---|
| **Taxing Jurisdiction** | DALLAS | DALLAS ISD | DALLAS COUNTY | DALLAS CO COMMUNITY COLLEGE | PARKLAND HOSPITAL | UNASSIGNED |
| **Tax Rate per $100** | $0.7767 | $1.412035 | $0.2531 | $0.124 | $0.2794 | N/A |
| **Taxable Value** | $1,150,000 | $1,150,000 | $1,150,000 | $1,150,000 | $1,150,000 | $0 |
| **Estimated Taxes** | $8,932.05 | $16,238.40 | $2,910.65 | $1,426.00 | $3,213.10 | N/A |
| **Tax Ceiling** |  |  |  |  | N/A | N/A |
|  |  |  |  |  | **Total Estimated Taxes:** | **$32,720.20** |

**DO NOT PAY TAXES BASED ON THESE ESTIMATED TAXES.** You will receive an **official tax bill** from the appropriate agency when they are prepared. Please note that if there is an Over65 or Disabled Person **Tax Ceiling** displayed above, **it is NOT reflected** in the Total Estimated Taxes calculation provided. Taxes are collected by the agency sending you the **official** tax bill. To see a listing of agencies that collect taxes for your property. **Click Here**

The estimated taxes are provided as a courtesy and should not be relied upon in making financial or other decisions. The Dallas Central Appraisal District (DCAD) does not control the tax rate nor the amount of the taxes, as that is the responsibility of each Taxing Jurisdiction. Questions about your taxes should be directed to the appropriate taxing jurisdiction. We cannot assist you in these matters. These tax estimates are calculated by using the most current certified taxable value multiplied by the most current tax rate. **It does not take into account other special or unique tax scenarios, like a tax ceiling, etc.**. If you wish to calculate taxes yourself, you may use the Tax Calculator to assist you.

### Building Footprint (Current 2019)



### History

© 2019 Dallas Central Appraisal District.
All Rights Reserved.

ELECTRONICALLY RECORDED  201500151173
06/11/2015 09:15:34 AM DT  1/8

## TAX LIEN DEED OF TRUST

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

NOTICE:  THIS IS A CONTRACT AND PART OF A TRANSFER TAX LIEN EXECUTED PURSUANT TO SECTION 32.06 OF THE TEXAS TAX CODE.  THIS LIEN IS A SUPERIOR LIEN AND TAKES PRIORITY OVER A HOMESTEAD INTEREST IN THE PROPERTY. THIS LIEN FURTHER TAKES PRIORITY OVER THE CLAIM OF ANY CREDITOR OF THE GRANTOR AND OVER THE CLAIM OF ANY HOLDER OF A LIEN ON PROPERTY ENCUMBERED BY THIS TAX LIEN, WHETHER OR NOT THE DEBT OR LIEN EXISTED BEFORE ATTACHMENT OF THIS TAX LIEN.  THIS LIEN IS INFERIOR ONLY TO: A CLAIM FOR ANY SURVIVOR'S ALLOWANCE, FUNERAL EXPENSES, OR EXPENSES OF THE LAST ILLNESS OF A DECEDENT MADE AGAINST THE ESTATE OF A DECEDENT AS PROVIDED BY LAW; A RECORDED RESTRICTIVE COVENANT THAT RUNS WITH THE LAND, RECORDED BEFORE JANUARY 1 OF THE YEAR THE TAX LIEN AROSE; OR A VALID EASEMENT OF RECORD RECORDED BEFORE JANUARY 1 OF THE YEAR THE TAX LIEN AROSE.  SEE SECTION 32.05 OF THE TEXAS TAX CODE.

## TERMS

| | |
|---|---|
| **Date:** | May 20, 2015 |
| **Grantor:** | Su Y. Amos Mun AKA Amos Su Young Mun & Micha Mun |
| **Grantor's Mailing Address:** | 11301 Dennis Rd. |
| | Dallas, TX 752292305 |
| **Trustee:** | Chris W. Stenholm |
| **Trustee's Mailing Address (including County):** | 4000 W. Vickery Blvd. |
| | Tarrant County |
| | Fort Worth, TX 76107 |
| **Lender:** | Texas Tax Solution II LLC |
| **Lender's Mailing Address:** | 4000 W. Vickery Blvd, Suite B |
| | Tarrant County |
| | Fort Worth, TX 76107-6421 |
| **Obligation:** | Promissory Note |

| | | |
|---|---|---|
| Date: | May 20, 2015 | Of even date herewith |
| Original principal amount: | $35,512.17 | |
| Borrower: | Su Y. Amos Mun AKA Amos Su Young Mun & Micha Mun | |
| Lender: | Texas Tax Solution II LLC | |
| Maturity Date: | July 3, 2025 | |
| Terms of Payment: | As provided in said note | |

**Property(including any improvements):**

The real property and improvements commonly referred to as 1) 11301 Dennis Rd., Dallas, TX 75229-2305 known to the tax department as 1) 00000609205000000 and being more particularly described as follows, to-wit:

> 1) BLK 6607 ACS 2.9521 VOL2003127/12692; as written in Deed - BEING all that certain lot, tract, or pastel of land situated in the H. S. BOWLES SURVEY, ABSTRACT No.69, and also being located in the City of Dallas, Block 6607, Dallas County, Texas, and being the same property conveyed to Stevecreek, Inc. by Virginia Theall p̶...

Texas Tax Solution II LLC is Licensed and Regulated by the
Texas Office of Consumer Credit Commissioner - License # 15572-57735

GOVERNMENT EXHIBIT

*recorded in Volume 71093, Page 1829, of the Deed Records, Dallas County, Texas*

together with all and singular, the rights, privileges, hereditaments and appurtenances pertaining thereto, if any.

**Prior Liens (including recording information):**
None.
**Other Exceptions to Conveyance and Warranty:**

---
---

**(If this section is blank, it shall be deemed that there are no Other Exceptions to Conveyance and Warranty.)**

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense. Grantor represents that this Tax Lien Deed of Trust ("deed of trust") and Obligation are given for the purpose of transferring tax liens in accordance with V.T.C.A., Tax Code, § 32.06.

This deed of trust shall secure, in addition to the Obligation, all funds hereafter advanced by Lender to or for the benefit of Grantor for legally authorized payment of any subsequent year's taxes, interest, penalties, collection costs, closing costs and/or recording fees, as well as the performance and/or payment of Grantor's covenants and agreements under this deed of trust and the Obligation (collectively, the "Secured Indebtedness"). All indebtedness secured hereby shall be payable to Lender at Lender's address as stated above, and unless otherwise provided in the instrument evidencing such indebtedness, shall bear interest at the same rate per annum as the Note bears, from the date of accrual of such indebtedness until paid. This deed of trust shall also secure all renewals and extensions of any indebtedness secured hereby.

**Clauses and Covenants**

**A.    Grantor's Obligations**

Grantor agrees to:

1.   make prompt payment, as the same becomes due, of the Note and of all installments of principal and interest thereon;

2.   keep the Property in good repair and condition;

3.   pay all taxes on the Property before delinquency;

4.   not authorize another tax lien transfer, other than to Lender, pursuant to V.T.C.A., Tax Code, § 32.06;

5.   defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

6.   maintain all insurance coverages with respect to the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender contemporaneously with the execution of this deed of trust and deliver renewals to Lender at least ten days before each such policy expires;

7.   obey all laws, ordinances, and restrictive covenants applicable to the Property;

8.   keep any buildings occupied as required by the Required Insurance Coverages;

9.   if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments;

10.   notify Lender of any change of address;

11.   upon the occurrence of an "Event of Default" (as hereinafter defined), Grantor agrees that Lender shall have the right, but not the duty, to inspect the Property and Grantor agrees to permit Lender and Lender's employees, agents and representatives reasonable access to the Property to conduct such inspections. All such inspections shall be during normal business hours and Lender shall give Grantor at least five (5) days advance written notice of the time and date of such inspections. Grantor hereby acknowledges that all such inspections shall be for the sole benefit of Lender and shall be for the sole protection of Lender and shall not be for the protection of Grantor or any other third

party; and

12.   upon written request of Lender from time to time, within five business days after Lender's request, Grantor shall execute and deliver to Lender, or to another person or entity designated by Lender, a written statement certifying, among other things, that (1) Lender has performed all of its obligations in accordance with the terms of the Note and this deed of trust; (2) Grantor has accepted the funds advanced by Lender in accordance with the Note; (3) the Note is in full force and effect and has not been amended, modified or superseded; (4) there is no existing default on the part of Lender or Grantor; (5) Grantor has not prepaid any amount of the Note; (6) Grantor has no claim against Lender which might be offset against the principal amount remaining on the Note; and (7) Grantor has no knowledge of any pledge or assignment by Lender of the Note or payments due thereunder, except for the assignment, if applicable, to Lender's lenders; and Grantor shall specify in detail if any of the foregoing matters is not true at the time that Lender requests the written statement.

13.   Make prompt payment of all fees and costs charged or incurred by Lender subsequent to closing of the property tax loan transaction evidenced by the Obligation and this deed of trust, but only to the extent such fees and costs are expressly authorized by V.T.C.A., Tax Code, § 32.06(e-1), V.T.C.A, Finance Code § 351.0021 and/or applicable law.

**B.    Lender's Rights and Duties**

1.   Lender or Lender's mortgage servicer may appoint in writing, with or without cause,  a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.

2.   If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

3.   Lender may apply any proceeds received under the insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the insurance proceeds available to Grantor for repairs.

4.   Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5.   Each of the following shall be an event of default (herein referred to as an "Event of Default") under the terms of this deed of trust, to-wit:

   a.   the failure of the Grantor to timely pay any principal, interest or any other sum due under the terms of the Obligation as and when due;

   b.   the failure of the Grantor to timely keep and perform any term, provision, covenant, condition or obligation to be kept or performed by Grantor under the terms of this deed of trust;

   c.   the failure to perform and keep the covenants and agreements contained in paragraphs A. 1-13 above;

   d.   the making of an assignment for the benefit of any creditor or the adjudication of Grantor as bankrupt or insolvent;

   e.   the sale or transfer by Grantor of all or part of the Property or Grantor's interest in the Property;

   f.   Borrower obtaining a loan from any entity or individual other than Lender to pay any subsequent year's ad valorem taxes on the Property and/or authorizing the transfer of the applicable Taxing Units' (as hereafter defined) tax lien to any other entity or individual other than Lender for any subsequent year's ad valorem taxes on the Property while this deed of trust is in effect;

   g.   if applicable, closing the bank account as designated by Grantor from which this loan is being repaid and referenced in the ACH Authorization Agreement of even date herewith without notifying Lender within five (5) business days of closing the account; and/or

   h.   the failure of Grantor to provide Lender with proof of payment of any subsequent year's ad valorem taxes imposed on the Property before such ad valorem taxes become delinquent.

6.   After the occurrence of an Event of Default, the Lender shall give notice to Grantor prior to acceleration following Grantor's breach of any covenant or agreement in this deed of trust.  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Grantor, by

which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this deed of trust and foreclosure sale of the Property. The notice shall further inform Grantor of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Grantor to acceleration and sale.

If the default is not cured on or before the date specified in the notice, Lender at its option may, unless applicable law prohibits:

   a.  remedy the default by taking action necessary to do so, including without limitation, making any payments on principal, interest, penalties, and attorney's fees with respect to any prior lien debt, payment of insurance premiums, payment of taxes and assessments, or any other action that Lender deems necessary to protect the lien(s) created by this deed of trust. Any amounts so paid shall bear interest from the dates of payment at the Note rate, shall be paid by Grantor on demand, and shall become part of the indebtedness secured by this deed of trust and recoverable as such in all respects; or

   b.  require immediate payment in full of all sums secured by this deed of trust without further demand, and after notice of acceleration as required by law, may invoke any and all other remedies permitted by applicable law.

7.   If there is an Event of Default under the terms of this deed of trust and the Event of Default continues after the required notice of the Event of Default, the time allowed to cure and the required notice of acceleration, Lender may unless applicable law prohibits, foreclose on the Property in the manner provided by V.T.C.A., Tax Code 32.06(c) and/or law for the foreclosure of tax liens.

8.   AS PERMITTED BY V.T.C.A., TAX CODE § 32.06(i), THE GRANTOR SPECIFICALLY AGREES THAT THE FORECLOSURE OF THE TAX LIEN TRANSFERRED TO THE LENDER PURSUANT TO V.T.C.A., TAX CODE § 32.06 MAY BE INSTITUTED EARLIER THAN ONE (1) YEAR FROM THE DATE ON WHICH THE LIEN IS RECORDED IN ALL COUNTIES IN WHICH THE PROPERTY IS LOCATED.

9.   Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

10.  **Notice of Right of Redemption.**  Following foreclosure, Grantor shall have any rights of redemption provided by Texas law.

11.  In the event Lender is named as a Defendant in a tax suit seeking to collect delinquent ad valorem taxes on the Property for any tax year(s) subsequent to those for which this loan is made, Lender has the right to participate in the delinquent tax suit and to foreclosure its interest in the Property.  Lender is entitled to take the following actions, and recover reasonable attorney's fees in connection therewith, including but not limited to:

   a.  filing a cross-claim in the delinquent tax suit;

   b.  filing an intervention in the delinquent tax suit;

   c.  participating in any trial or hearing in the delinquent tax suit;

   d.  participating in any judgment taken in the delinquent tax suit to the extent of any funds still remaining due to Lender under this deed of trust.

12.  If Lender appears in a delinquent tax suit against the Property and incurs legal fees and expenses for such representation, and a judgment is subsequently not taken by the Taxing Units for any reason, Lender shall be reimbursed by Grantor for the reasonable legal fees and expenses it has incurred in protecting its interest in the Property. Grantor agrees that Lender can add the amount incurred as legal fees to the balance of the indebtedness secured by this deed of trust and those amounts shall bear interest from the date that the amount was incurred, to and including the date of reimbursement, computed at the Note rate of interest per annum. All such sums, together with the interest thereon, are secured by this deed of trust to the extent permitted by applicable law.

13.  If Lender appears in a tax suit against the Property and incurs legal fees and expenses for such representation, and a judgment is subsequently taken by the Taxing Units, and subsequent thereto Lender lends money to Grantor to either pay the judgment or pay taxes for a subsequent year, Grantor authorizes Lender to include any outstanding legal fees and costs in the total amount of the subsequent loan to the extent permitted by applicable law.

14.  The rights and remedies expressly conferred hereinabove are cumulative of all other rights and remedies transferred by this deed of trust, and of those provided by law or in equity. They shall not be deemed to deprive Lender or Trustee of any other legal or equitable rights or remedies, by judicial proceedings or otherwise, appropriate to

enforce the conditions, covenants, and terms of this deed of trust and of the Note.  The employment of any remedies under this deed of trust, or otherwise, shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

15.     Lender may transfer the Note and this deed of trust, unless prohibited by applicable law.

### C.      Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee, or any substitute trustee, will:

1.      Institute suit for collection of the Secured Indebtedness and for foreclosure of this deed of trust lien and/or the related transferred tax lien(s) in accordance with applicable law; and

2.      be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

### D.      General Provisions

1.      If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser.  If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.      Recitals in any deed conveying the Property will be presumed to be true.

3.      Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.      Except as set forth in V.T.C.A., Tax Code, §§ 32.04 and 32.05, this lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

5.      If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6.      Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred (to the extent and in such amounts as are allowable by law), including attorney's fees, court and other costs (to the extent and in such amounts as are allowable by law), Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender shall not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.      Grantor assigns to Lender absolutely, not only as collateral, all present and future rent and other income and receipts from the Property.   Leases are not assigned. Grantor warrants the validity and enforceability of the assignment. Grantor may, as Lender's licensee, collect rent and other income and receipts as long as Grantor is not in default under the Obligation or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the Obligation and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due with respect to the Obligation and this deed of trust, Grantor may retain the excess. If Grantor defaults in the timely payment of the Obligation or performance of this deed of trust, Lender may terminate Grantor's license to collect rent and other income and receipts and then as Grantor's agent may rent the Property and collect all rent and other income and receipts. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first, to the extent permitted by law, to expenses incurred in exercising Lender's rights and remedies and then to Grantor's obligations with respect to the Obligation and this deed of trust in the order determined by Lender. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

Texas Tax Solution II LLC is Licensed and Regulated by the
Texas Office of Consumer Credit Commissioner - License # 15572-57735

109702
[7]



8.  Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the indebtedness secured by this deed of trust.

9.  In no event may this deed of trust secure payment of any debt, sum, charge, cost, expense, fee or obligation that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law. If the Property is the Grantor's homestead, in no event may this deed of trust secure payment of any debt, sum, charge, cost, expense, fee or obligation that may not lawfully be secured by a lien on a homestead or create a lien otherwise prohibited by law. This provision overrides any conflicting provisions in this and all other instruments concerning the indebtedness secured by this deed of trust.

10. When the context requires, singular nouns and pronouns include the plural.

11. The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

12. This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

13. If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

14. Except as expressly set forth herein and in the Note, Grantor and each surety, endorser and guarantor of the Obligation waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest ,and notice of protest, to the extent permitted by law.

15. To the extent permitted by law, Grantor agrees to pay reasonable attorney's fees and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement provided, however, notwithstanding anything contained herein or in any other instrument to the contrary the amount of attorney's fees, court and other costs of enforcing Lender's rights under this deed of trust shall expressly be limited to such amounts as are permitted by law.

16. If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

17. The term *Lender* includes any assignees and/or successor in interest of the Lender and any mortgage servicer for the Lender.

18. Grantor represents that this deed of trust and the Note are given for the following purposes: The Grantor has requested and authorized the Lender to pay the ad valorem taxes, penalties, interest and collection costs assessed against the Property for Account 1) 00000609205000000 for taxes on the Property that are delinquent and due and owing by the Grantor to Dallas County, Texas, and all other taxing units for which Dallas County, Texas, serves as the collecting agent and/or tax collector, and for which the Dallas County Tax Assessor Collector collects taxes (hereinafter collectively the "Taxing Units") and the Grantor has requested and authorized the tax collector for the Taxing Units (hereinafter the "Tax Assessor Collector") to transfer the tax liens held by the Taxing Units securing the payment of all of the above described taxes to the Lender as is authorized by V.T.C.A., Tax Code § 32.06. The Note evidences, in whole or in part, the amount advanced by the Lender for all above-described taxes and, if applicable, closing costs as permitted by law. Grantor agrees that Lender is subrogated to the rights, liens and equities of the Taxing Units paid, and the same remain in force and effect by the Taxing Units' transfer of their lien(s) and through this deed of trust until the Note is paid. This deed of trust does not waive the tax liens, and the tax liens and the lien and rights created by this instrument shall be cumulative.

    IN NO EVENT MAY THIS DEED OF TRUST BE CONSTRUED TO (I) AUTHORIZE LENDER TO PAY TAXES THAT ARE NOT DELINQUENT OR DUE AS OF THE DATE HEREOF OR (II) CREATE A LIEN FOR PAYMENT OF TAXES THAT ARE NOT DELINQUENT OR DUE AS OF THE DATE HEREOF. THE FOREGOING SENTENCE OVERRIDES ANY CONFLICTING PROVISIONS IN THIS INSTRUMENT AND ALL OTHER INSTRUMENTS CONCERNING THE INDEBTEDNESS SECURED BY THIS DEED OF TRUST.

19. This deed of trust shall be recorded in each county in which the Property is located.

20. A sworn document and affidavit executed by the Tax Assessor Collector, or person designated by the Tax Assessor Collector, attesting to the transfer of the tax liens to the Lender as more fully set forth in paragraph D(18) above

Texas Tax Solution II LLC is Licensed and Regulated by the
Texas Office of Consumer Credit Commissioner - License # 15572-57735

109702
[8]

shall be recorded in each county in which the Property is located (hereinafter referred to as the "Certification of Payment of Taxes and Transfer of Tax Lien).

21. Unless prohibited by law, during the first (1st) six (6) months after the date on which the Certification of Payment of Taxes and Transfer of Tax Lien is recorded in all counties in which the Property is located (hereinafter the "Initial Six Month Period"), the Lender as transferee of the tax lien may charge a reasonable fee for a payoff statement that is requested after an initial payoff statement is provided. Unless prohibited by law, at any time after the end of the Initial Six Month Period and before a notice of foreclosure of the transferred tax lien is sent, the Lender as transferee of the tax lien may require the property owner to provide written authorization and pay a reasonable fee before providing information regarding the current balance owed by the property owner to the transferee or the holder of the tax lien.

22. **ARBITRATION.** Borrower and Lender agree that any claim, dispute, or controversy relating to this transaction - including any claims related to the interpretation, alleged breach, enforceability, or validity of this document or any other loan documents - shall be resolved exclusively and finally by binding arbitration administered by the National Administration Forum (NAF) under its Code of Procedure then in effect. The arbitration shall be conducted in a mutually agreeable location by a single arbitrator, whose award shall be final and binding and entered as a final judgment by any court of competent jurisdiction. This provision applies to all contract, tort, and other claims, whether pre-existing, present, or future, and including all statutory, common law, intentional tort, or equitable claims - whether under federal or state law. However, in no way does this provision limit Lender's ability to exercise its statutory and contractual judicial foreclosure rights.

Borrower and Lender further agree that the arbitration will be limited solely to the dispute or controversy between themselves. Neither Borrower nor Lender shall be entitled to join or consolidate claims by or against other borrowers or arbitrate any claim as a representative or class action or in a private attorney general capacity.

23. Within a reasonable time after full payment of the Obligation and satisfaction of all terms of this deed of trust, Lender will file a release of tax lien in each county in which the Property is located and send a copy to the Tax Assessor Collector. Grantor hereby agrees to pay Lender a reasonable fee for filing the release.

GRANTOR(S):                                          EXECUTED this the 2(0 day of May, 2015

Sign:

_____
Su Y. Amos Mun AKA Amos Su Young Mun

Sign

_____
Micha Mun


STATE OF TEXAS                    )
                                  )
COUNTY OF DALLAS                  )

This instrument was acknowledged before me on the ___2(0___ day of ___May___, 2015
                                                        Day              Month

by Su Y. Amos Mun AKA Amos Su Young Mun & Micha Mun.

(NOTARY'S SEAL)

ERICA R. PUGH
NOTARY PUBLIC
My Commission Expires
March 23, 2016

_____
Notary Public, State of TEXAS

PREPARED BY THE OFFICE OF:               AFTER RECORDING, RETURN TO:
Stenholm & Douglas, P.C.                 Texas Tax Solution II LLC
4000 W. Vickery Blvd.                    4000 W. Vickery Blvd, Suite B
Fort Worth, TX 76107                     Fort Worth, TX 76107-6421

Texas Tax Solution II LLC is Licensed and Regulated by the            109702
Texas Office of Consumer Credit Commissioner - License # 15572-57735     [9]

**Filed and Recorded**
**Official Public Records**
**John F. Warren, County Clerk**
**Dallas County, TEXAS**
**06/11/2015 09:15:34 AM**
**$54.00**
**201500151173**



OFFICE OF CYNTHIA FIGUEROA CALHOUN, COUNTY CLERK, DALLAS COUNTY, TEXAS
ASSUMED NAME CERTIFICATE FOR AN INCORPORATED BUSINESS OR PROFESSION

NOTICE: " CERTIFICATES" ARE VALID FOR A PERIOD NOT TO EXCEED 10 YEARS FROM
THE DATE FILED IN THE COUNTY CLERK'S OFFICE. (CHAPTER 36, SECT. 1,
TITLE 4 BUSINESS AND COMMERCE CODE)

THIS CERTIFICATE PROPERLY EXECUTED IS TO BE FILED IMMEDIATELY
WITH THE COUNTY CLERK

FILED in the Office of the
Secretary of State of Texas
NOV 0 4 2003
Corporations Section

NAME UNDER WHICH BUSINESS OR PROFESSIONAL SERVICES IS OR WILL BE CONDUCTED:
HANGIL HOTEL TOWN (print or type)

Address: 11301 DENNIS RD
City: DALLAS State: TEXAS Zip Code: 75229

1. The name of the incorporated business or profession as stated in its Articles of Incorporation or comparable document is:
ONE WAY INVESTMENTS INC.

2. The state, country, or other jurisdiction under the laws of which it was incorporated is:
TEXAS, DALLAS COUNTY, and the address of its registered or similar office in that jurisdiction is
2560 ROYAL LN DALLA, TX 25229 (Suit No. 205)

3. The period, not to exceed ten years, during which this assumed name will be used is: 10 yrs.

4. The corporation is a (circle one) business corporation, non-profit corporation, professional corporation, professional association or other
type of corporation (specify)
or other type of incorporated business, professional or other association or legal entity (specify): N A

5. If the corporation is required to maintain a registered office in Texas, the address of the registered office is:
2560 ROYAL LN Suite 205 DALLAS, TX 75229
and the name of its registered agent at such address is AMOS MUN. The address of the
principal office (if not the same as the registered office) is: NA

6. If the corporation is not required to or does not maintain a registered office in Texas, the office address in Texas is:
NA
and if the corporation is not incorporated, organized or associated under the laws of Texas, the address of its place of business in Texas
is: NA, and
the office address elsewhere is: NA

7. The county or counties where business or professional services are being or are to be conducted or rendered under such assumed name
are (if applicable, use the designation "all" or "all except ALL

8. If this instrument is executed by the attorney-in-fact, the attorney-in-fact hereby states that he has been duly authorized, in writing,
his principal to execute and acknowledge this instrument.

Signature of Officer, representative or
attorney-in-fact of the corporation

THE STATE OF TEXAS
COUNTY OF DALLAS

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Amos Y. MUN

known to me to be the person____ whose name____ is/are subscribed to the foregoing instrument and, under oath, acknowledged to
that____ he____ signed the same for the purpose and consideration therein expressed.
GIVEN UNDER MY HAND AND SEAL OF OFFICE, on 10-29, 20 03

CYNTHIA FIGUEROA CALHOUN, COUNTY CLERK
DALLAS COUNTY, TEXAS
BY:
Deputy County Clerk

Notary Public in and for State of Texas

GOVERNMENT
EXHIBIT
3

Form No. 423 (02-03)



05-102
(Rev.9-15/33)

# Texas Franchise Tax Public Information Report

*To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),*
*Professional Associations (PA) and Financial Institutions*

■ **Tcode** 13196 Franchise

■ Taxpayer number

| 2 | 0 | 0 | 0 | 6 | 4 | 1 | 3 | 2 | | |

■ Report year

| 2 | 0 | 1 | 8 |

**You have certain rights** under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you.  Contact us at 1-800-252-1381.

Taxpayer name
**ONE WAY INVESTMENTS INC**

○ Blacken circle if the mailing address has changed.

Mailing address
**11301 DENNIS RD**

City
**DALLAS**

State
**TX**

ZIP code plus 4
**75229**

Secretary of State (SOS) file number or Comptroller file number

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
**11301 DENNIS RD, DALLAS, TX, 75229**

Principal place of business
**11301 DENNIS RD, DALLAS, TX, 75229**

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

**Please sign below!** **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A**  Name, title and mailing address of each officer, director, member, general partner  or manager.

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| **AMOS S MUN** | | ○ YES | Term expiration | |
| Mailing address **11301 DENNIS RD** | City  **DALLAS** | | State  **TX** | ZIP Code **75229** |
| Name | Title | Director ○ YES | Term expiration | m m d d y y |
| Mailing address | City | | State | ZIP Code |
| Name | Title | Director ○ YES | Term expiration | m m d d y y |
| Mailing address | City | | State | ZIP Code |

**SECTION B**  Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent  or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| **NONE** | | | |
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C**  Enter information for each corporation , LLC, LP, PA or financial institution, if any, that owns an interest of 10  percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| **NONE** | | | |

Registered agent and registered office currently on file *(see instructions if you need to make changes)*

Agent:

*You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.*

Office:

City

State

ZIP Code

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

**sign here▶**

**AMOS MUN**

Title
**PRESIDENT**

Date
**09/15/2018**

Area code and phone number
(          )          -

**Texas Comptroller Official Use Only**

VE/DE  ○     PIR IND  ○

GOVERNMENT EXHIBIT 4

TRANSMITTER ID = CSPROFTWSPROD

TLN = 00042640416

# Han Gil Hotel Town
11301 Dennis Rd, Dallas, TX

**Write a review**

## 2.9 ★★★  Fair ⌄
35 reviews on Google

 **Bobby Joe**                                            1/5
4 days ago on G Google

I couldn't give it negative five stars. If you are looking for drugs of any kind, welcome
to your paradise. Even though they are in the middle of renovations, that won't help
this place. Dirty rooms, poor service, used syringes dope bags and the long list of
other things wrong with this place is mind boggling. Don't leave anything in your car.
Don't leave anything in your room. As a matter of fact, just don't bring anything of
value with you at all because it will disappear. Absolutely positively worst say I have
ever experienced! I highly recommend that you do not stop at this place for even five
minutes.

 Like

 **Javier Fernandez**                                      3/5
a month ago on G Google

It's the best in traps if your looking to open one in the area just be sure you tell them
you want one of the newly renovated suites



# Han Gil Hotel Town

11301 Dennis Rd, Dallas, TX

## 2.9 ★★★ Fair ∨
35 reviews on Google

Write a review

---



**Tom R**
a month ago on **G** Google

1/5

Unless you are looking for drugs - Stay away THIS IS NOT A PLACE FOR PEOPLE TO STAY. I cant believe the city has not shut it down yet.

 1

---



**neil soliman**
4 months ago on **G** Google

4/5

If you're not strapped and ready, you are going to die here.  When you get into your room, pop a couple of xans, lock every door, and pray that sleep comes.  DO NOT bring children to this place.

 1

# Han Gil Hotel Town
11301 Dennis Rd. Dallas, TX

## 2.9 ★★★  Fair ⌄
35 reviews on Google

^

**Erica Bahena**
a month ago on G Google

1/5

It was horrible

👍 Like

**Anthony Ortiz**
2 months ago on G Google

5/5

Basically a trap 🔫

👍 Like

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

**CIVIL COVER SHEET**

RECEIVED

MAR - 4 2019

CLERK, U.S. DISTRICT COURT
NORTHE N DISTRICT OF TE

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
United States of America

**DEFENDANTS**
Su Y. Amos Mun; Micha Mun; and One Way Investments, Inc. d/b/a Han Gil Hotel Town

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lindsey Beran, Assistant U.S. Attorney
U.S. Attorney's Office, 1100 Commerce Street, Suite 300,
Dallas, TX 75242   Phone: 214-659-8600

Attorneys *(If Known)*

3-19CV-533-B

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*          Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability |  | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability    ☐ 367 Health Care/ |  |  | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander     Personal Injury |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability    ☐ 368 Asbestos Personal |  | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine     Injury Product |  | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product     Liability |  | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage | Relations | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury    ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
|  | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical |  | ☐ 893 Environmental Matters |
|  | Medical Malpractice | Leave Act |  | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate |  | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence |  | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations    ☐ 530 General |  |  | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty |  **IMMIGRATION** |  | State Statutes |
|  | Employment   **Other:** | ☐ 462 Naturalization Application |  |  |
|  | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration |  |  |
|  | Other    ☐ 550 Civil Rights | Actions |  |  |
|  | ☐ 448 Education    ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - |  |  |  |
|  | Conditions of |  |  |  |
|  | Confinement |  |  |  |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. §§ 801-971 (21 U.S.C. §§ 856, 843)
Brief description of cause:
Civil Penalties and Injunctive relief for maintaining a drug-involved premises

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
0.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE                    SIGNATURE OF ATTORNEY OF RECORD
*Lindsey Beran*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____